IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH R. HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:07-CV-1050-WKW [WO] |
| | ) |
| ARMY FLEET SUPPORT, L.L.C., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On September 18, 2008, Defendant Army Fleet Support, L.L.C. ("AFS") moved for summary judgment on Plaintiff Joseph R. Hudson's claim for relief under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794(a).[1] (Doc. # 16.) Section 504 "prohibits discrimination against handicapped persons in any program or activity receiving federal financial assistance." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 587, 599 (1986). Hudson did not file a response to the summary judgment motion (Doc. # 47) until April 9, 2009.[2] In the interim, the court granted summary judgment to AFS on a similar claim in a different suit on the basis that AFS was not covered by the statute and that the plaintiff thereby lacked a cause of action. *DeFrank v. AFS*, No. 1:07-cv-775, 2009

---

[1] Hudson has since voluntarily withdrawn his state-law claims. (Doc. # 32; Pl.'s Resp. 2 (Doc. # 47).)

[2] Hudson was permitted to wait to file a response until after the Magistrate Judge's ruling on whether a protective order should be entered (*see* Doc. # 46); a protective order was entered on March 11, 2009 (Docs. # 43 & 44).

WL 737113 (M.D. Ala. Mar. 20, 2009) (Watkins, J.), *appeal docketed*, No. 09-11973-C (11th Cir. Apr. 23, 2009).

Because of the delay in his response, Hudson benefitted from the court's decision in *DeFrank*.[3]  Not surprisingly, his response offers arguments that are more developed than those in *DeFrank* as to whether Section 504 applies to AFS.[4]  Indeed, although *DeFrank* and this case are essentially the same with respect to resolving the legal standard, Hudson's more robust opposition to summary judgment complicates the application of that standard. Nevertheless, the reasoning in *DeFrank* ultimately justifies granting summary judgment in this case as well, and therefore, for the reasons that follow, AFS's motion for summary judgment (Doc. # 16) is due to be granted.[5]

## I. JURISDICTION

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and there are allegations sufficient to support both.

## II. STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] Hudson's and DeFrank's counsel are the same.

[4] AFS's reply brief (Doc. # 49) relies heavily upon *DeFrank*.

[5] Because this case essentially relitigates the issues in *DeFrank*, its reasoning is adopted and incorporated in this opinion.

56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

### III. DISCUSSION

On a macroscopic level, this case replicates *DeFrank*: a plaintiff formerly employed by AFS is suing AFS for disability discrimination and retaliation. The threshold question is

whether AFS is subject to Section 504. During the time governing the alleged violations, AFS had a contract with the United States Government to provide aircraft maintenance and logistics support to flight training programs at Fort Rucker, Alabama. In *DeFrank*, the court found the plaintiff had not produced sufficient evidence to show that AFS was a program or activity in receipt of federal financial assistance within the meaning of Section 504, and therefore was not subject to suit. 2009 WL 737113, at *4. Hudson's response to summary judgment focuses on rebutting reasons given in *DeFrank* for why a plaintiff in his position does not have a cause of action under Section 504.[6]

In *DeFrank*, this court rejected the arguments that the following alleged benefits qualified AFS as a Section 504 recipient: (1) training from the Equal Employment Opportunity Commission ("EEOC") provided to AFS; (2) services provided to AFS employees on health and wellness days at the Soldier Center at Fort Rucker; (3) training on Government equipment; (4) management training; and (5) use of Government equipment. *See* 2009 WL 737113, at *4-5. These arguments were rejected for several reasons – for lack of evidence to support DeFrank's claims and because AFS was not the "recipient" of assistance, any alleged benefits were part of the umbrella contract to provide maintenance and logistics, and there was otherwise no evidence of Congressional intent to subject AFS to Section 504. *Id*. *DeFrank* explained that just because an entity receives direct funds or financial benefits, that alone does not trigger Section 504 coverage. *Id.* at *2. Congress must

---

[6] There is an implied cause of action under Section 504 if an entity is subject to its terms. *E.g.*, *Jones v. Metro. Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1377 n.1 (11th Cir. 1982).

have *intended* for that assistance to be a *subsidy* that would subject an entity to the Rehabilitation Act's provisions. *Id.*; *see also Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1336 (11th Cir. 2005) (relying on a case which "recogniz[ed] that regardless of whether financial benefits received by an entity appeared 'on its face' to be a form of 'federal financial assistance' within the meaning of the Rehabilitation Act, the court must determine whether Congress intended for the recipient of such financial benefits to be subject to the Rehabilitation Act").[7]

Hudson's response relies primarily on a Department of Defense ("DoD") regulation's definition of "federal financial assistance" to show the intent of Congress to subject entities like AFS to Section 504. (Pl.'s Resp. 11 ("The plain language of [the regulation] . . . clearly brings AFS within the provisions of Section 504 because it chooses to receive and benefit from services and property that are not included in the requirements of the procurement contract but which are provided and/or funded by the federal government.").) The DoD regulation, 32 C.F.R. § 56.3, defines "[f]ederal financial assistance" as:

> Any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the Federal Government provides or otherwise makes available assistance in the form of:
>
> . . .

---

[7] *Black's Law Dictionary*'s definition of "subsidy" is a "[a] grant, usu[ally] made by the government, to any enterprise whose promotion is considered to be in the public interest." *Black's Law Dictionary* 1469 (8th ed. 2004). As described by this definition, a subsidy serves an end outside of market participation, and granting a subsidy recognizes the public benefit dimension of providing for the recipient.

>(2) Services performed by Federal personnel, including technical assistance, counseling, training, and provision of statistical or expert information.
>
>(3) Real and personal property or any interest in or use of such property, including:
>
>>(i) Transfers of leases of such property for less than fair market value or for reduced consideration.
>>(ii) Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal government.

*Id.*

Hudson argues that AFS made arrangements with the Government for Government personnel to provide health and wellness programs at the Soldier Center (Pl.'s Resp. 12), for Government personnel and private resources paid for by the Government to provide the management training (Pl.'s Resp. 13-14), for training to AFS employees from representatives of the EEOC (Pl.'s Resp. 16-17), and for the free use of the indoor swimming pool, gymnasium, and other related facilities at Fort Rucker (*see* Pl.'s Resp. 11-13).[8] These arrangements, Hudson contends, fall under the services or property subsections of the DoD regulation.

These arrangements, however, do not provide *assistance to* AFS, let alone assistance in the form of the services and property the DoD regulation describes. The health and wellness programs are open to AFS employees, but they are not *subsidies to AFS*. This distinction is explained in *DeFrank*. *See* 2009 WL 737113, at *4. Hudson cannot prove that

---

[8] Hudson does not assert as many forms of assistance as were at issue in *DeFrank*. *See* 2009 WL 737113, at *2.

6

AFS would have had any obligation to offer gym membership or health-related services to its employees had the Government not offered its facilities. Thus, the Government is not *subsidizing* any part of AFS's costs. The subsidy Hudson asserts AFS receives by offering this perk to employees – a competitive advantage over other employers in the region – if recognized as a subsidy, would swallow any distinction between a subsidy to an employer and a benefit to an employer's employees, and the two are not synonymous, *see id.* at *3.

Hudson's explanation for why the external training in lean management qualifies as federal financial assistance, although more detailed than DeFrank's, avoids the unfavorable point in *DeFrank* that Hudson cannot overcome: Lean management training is to the *Government's* benefit. The training is a part of the employment arrangement, mutually beneficial to both parties, and is not *assistance* to a private entity. In this way, the arrangement is one reached between market participants. *See DeFrank*, 2009 WL 737113, at *2.

Finally, Hudson is incorrect that "[AFS's] assertion that EEOC assistance is available and free to all employers is not relevant to the matter of whether it received federally financed technical assistance." (Pl.'s Resp. 17.) The availability of EEOC technical assistance to all employees speaks directly to whether Congress intended for that assistance to trigger coverage under Section 504. Under Hudson's logic, Congress requires any entity whose employees receive free EEOC training for any portion of the civil rights laws to be subject to Section 504. That logic surely must fail. Congress could not have intended for

7

Section 504 to overlap with all entities subject to federal discrimination laws that take advantage of EEOC training.  Indeed, if Congress had intended Section 504 to reach that far, it could have achieved that by simply subjecting all entities subject to the civil rights laws generally, to Section 504.  Section 504 is focused much more narrowly.  Hudson also has not shown that AFS received training specific to Section 504.  (*See* Darlene Whalen Aff. ¶ 12 (Def.'s Mot. Summ. J. part 4) (admitting assistance but not specifics).)

For these reasons, and those already explained in *DeFrank*, Hudson's cause of action under Section 504 of the Rehabilitation Act fails as AFS is not, or does not incorporate, a "program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a).

### IV.  CONCLUSION

Accordingly, it is ORDERED that AFS's motion for summary judgment (Doc. # 16) is GRANTED.  An appropriate judgment will be entered.

DONE this 15th day of July, 2009.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE